UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICHOLAS V. CICCONE,

                Plaintiff,

   -against-

MRS. RYAN, *Parole Officer, Peekskill Parole Office*,

                Defendant.

14-cv-1325 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Nicholas V. Ciccone ("Plaintiff," or "Ciccone"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that Parole Officer Ryan ("P.O. Ryan," or Defendant) violated his Eighth and Fourteenth Amendment rights by failing to provide him with clothing, refusing to allow him to work, and interfering with his use of prescribed pain medication while he was under parole supervision. Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of Plaintiff's complaint for failure to state a claim upon which relief can be granted. For the following reasons, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

The following facts are taken from the Complaint and are accepted as true for the purposes of this motion.

Plaintiff Ciccone was released from detention by the New York State Department of Corrections ("DOCCS") to the Division of Parole on November 9, 2012. (Compl. ¶ 12.) Upon his release, he was assigned to Defendant P.O. Ryan's caseload. (*Id.* ¶ 14.) Because Plaintiff was

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2015

undomiciled at the time of his release, Defendant arranged for him to be housed in the Bridges Halfway House ("Bridges"), located in Newburgh, New York. (*Id*. ¶ 16.)

Bridges Halfway House requires its residents to depart the halfway house at 8:30 a.m. each morning during the week and residents cannot return before 3:00 p.m. (Compl. ¶ 17.) Residents can stay indoors on Saturday, as long as the staff does not need to leave, and are given a choice on Sundays of attending church services with the staff or leaving the halfway house until the staff members return. (*Id*. ¶¶ 18-19.) Upon his arrival at Bridges, Plaintiff was not provided with toiletries or clothing. (*Id*. ¶ 22.) After his first full day at Bridges, in which he was not required to remain outside because it was a Saturday, Plaintiff was then required to leave the halfway house over the next several days, between the hours of 8:30 a.m. and 3:00 p.m., and was forced to walk around in the cold without proper winter attire. (Compl. ¶¶ 25-27.)

Plaintiff tested positive for cocaine on November 13, 2012, and was sent to an inpatient treatment program, but he returned to Bridges on December 10, 2012. (*Id*. ¶ 28.) On that same day, he had his first regularly-scheduled parole interview with Defendant, which he attended. (*Id*. ¶¶ 29-30.) At this initial meeting with P.O. Ryan, Plaintiff informed her of his situation and his concerns regarding employment, clothing, and housing. (Compl. ¶ 31.) Plaintiff told Defendant that he needed clothing in order to pursue employment and to keep from freezing outside, since Bridges required him to stay outside during the day without winter attire. (*Id*. ¶¶ 32-33.) Defendant responded by telling Plaintiff to ask Bridges for clothing or to look at churches; she also ordered Plaintiff not to seek or obtain employment because he would be too busy with the drug treatment programs that he was required to attend. (*Id*. ¶¶ 34-35.) Plaintiff alleges that Defendant specifically stated that he could "deal with it, or she would lock his ass up, and he

could go back to prison." (*Id*. ¶ 38.) Because he did not want to go back to prison, Plaintiff did as he was told. (*Id*. ¶ 39.)

Plaintiff next spoke with a senior staff member at Bridges regarding clothing, and he was instructed to take the issue up with his parole officer. (Compl. ¶¶ 40-41.) Plaintiff never received any clothes, but rather spent most days walking around the streets in the cold. (*Id*. ¶¶ 42-44.) Any refuge from the cold that he was able to seek was temporary at best, and he met other parolees that told Plaintiff they were "being subjected to the same conditions as well." (*Id*. ¶¶ 45-46.) Plaintiff called Defendant in early- to mid-December seeking assistance in finding shelter from the cold during the day, but was told by P.O. Ryan that "Parole doesn't care, Mr. Ciccone." (*Id*. ¶ 48.)

Around approximately December 12-14, 2012, Plaintiff's back, with which he has previously had medical issues, "went out" and he made his way to St. Luke's Hospital in Newburgh, where he was prescribed Valium and Vicodin. (Compl. ¶¶ 51-52.) Plaintiff informed the staff at Bridges and P.O. Ryan about the prescription. (*Id*. ¶¶ 54, 57.) P.O. Ryan instructed Plaintiff not to take the narcotic pain medication he had been prescribed. (*Id*. ¶¶ 58, 60.) Plaintiff continued to take the medication. (*Id*. ¶ 63.)

A few days later, on one of the days Plaintiff spent walking around outside in the cold, a man who owned a home in the area asked Plaintiff if he would be willing to help with cleaning the man's home in exchange for $50. (Compl. ¶¶ 63-64.) Plaintiff accepted, did the work, and then proceeded to his scheduled parole interview. (*Id*. ¶¶ 65-67.) At his parole interview, Defendant became "irate" and told Plaintiff that he was not to take the painkillers and that he was not to be working, and she suggested alternate pain medication. (*Id*. ¶¶ 71-72, 74, 75, 81-83.) When Plaintiff explained that he needed clothes and just wanted to work to take care of

himself, Defendant allegedly responded, "Parole does not care if you have underwear, Mr. Ciccone." (*Id.* ¶ 79.)

Two days later, Plaintiff submitted to a urinalysis test at Bridges, and tested positive for the prescription medications that were in his system. (Compl. ¶¶ 84-85.) The staff called P.O. Ryan, who drove to Bridges to meet with Plaintiff. (*Id.* ¶ 86.) Defendant gave Ciccone two options—long-term inpatient treatment or return to prison. (*Id.* ¶¶ 86-87.) Plaintiff chose to return to prison. (*Id.* ¶ 88.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint does not require "detailed factual allegations" to survive a motion to dismiss, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. However, "a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently 'raise a right to relief above the speculative level.'" *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 223 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

When making this assessment, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *see Iqbal*, 556 U.S. at 679.

Nevertheless, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Iqbal*, 556 U.S. 662) (internal quotation omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555. This liberal pleading standard is particularly applicable where a pro se plaintiff alleges a violation of his or her civil rights. *See Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005). Courts utilize this policy for *pro se* submissions because "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Additionally, this Court "may consider factual allegations made by a *pro se* plaintiff in opposition papers and other additional materials." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 728 (S.D.N.Y. 2002) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)). However, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y.2009) (internal citations omitted) (alteration in original). To survive a motion to dismiss, even a pro se plaintiff must still assert "factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NY State Dep't of Labor*, 709 F. Supp. 2d at 224 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiff asserts two causes of action, arising under § 1983, for violations of his Eighth and Fourteenth Amendment rights.

## I.   Eighth Amendment Standard

The Eighth Amendment forbids the imposition of punishment that is "cruel and unusual." U.S. Const. amend. VIII. Plaintiff claims that his rights under the Eighth Amendment have been

violated by Defendant. His Eighth Amendment claims stem from Defendant's deliberate indifference based on her instruction to Plaintiff that he not seek employment, her interference with his prescribed medication, and her failure to provide Plaintiff with, or assist him in securing, winter clothing and related items.

"[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). At the time that the alleged Eighth Amendment violations occurred in this case, Plaintiff was on parole, not incarcerated or institutionalized. Plaintiff's claims that Defendants' actions and failure to assist him constitute deliberate indifference are thus appropriately analyzed under the Fourteenth Amendment, not the Eighth. *See, e.g., McGhie v. Main*, 11-CV-3110, 2011 WL 4852268 at *5 (E.D.N.Y. Oct. 12, 2011) ("[Plaintiff] was not incarcerated or institutionalized when, as he alleges, he was deprived of necessary psychiatric care. . . . The fact that such psychiatric care was a condition of [Plaintiff]'s supervised release does not alter the analysis."); *Taylor v. Garwood*, 98 F. Supp. 2d 672, 677 (E.D. Pa. 2000) (finding that relationship between probation officer and probationer was more like relationship between child and county in *Deshaney*[1] than special relationship in *Estelle*[2]).

## II.     Fourteenth Amendment Standard

The State's duty to protect is more limited under the Fourteenth Amendment. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may

---

[1] *Deshaney v. Winnebado Cty. Dep't of Soc. Serv.*, 489 U.S. 189 (1989) (holding that State had no constitutional duty to protect child from his father after receiving reports of possible abuse and that State's failure to protect individual against private violence does not constitute violation of due process clause).

[2] *Estelle v. Gamble*, 429 U.S. 97 (1976) (holding that deliberate indifference to serious medical needs of prisoners constitutes violation of Eighth Amendment).

6

not deprive the individual." *DeShaney v. Winnebado Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 196 (1989). The Constitution does, however, impose affirmative duties of care and protection in some circumstances. In such cases, the government's "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id*. at 200; *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). The Second Circuit, interpreting *DeShaney*, has concluded that there are two exceptions to the general rule that there is no affirmative right to governmental aid: the "special relationship" exception and the "state created danger" exception. *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).

Plaintiff's claims do not implicate the "state created danger" exception because he has not alleged that he was the victim of any private violence, so the Court addresses only the special relationship exception.

The special relationship exception arises only in limited situations. "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself," a special relationship and an attendant constitutional duty arise. *DeShaney*, 489 U.S. at 200. If the government then fails to provide for that individual's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Id*. Such a special relationship can arise in scenarios involving incarceration, institutionalization, "or other similar restraint of personal liberty." *Id.*; *see also Youngberg v. Romeo*, 457 U.S. 307 (1982) (duty to provide necessary health services to involuntarily committed mental patients);

*Estelle v. Gamble*, 429 U.S. 97 (1976) (duty to provide adequate medical care to incarcerated prisoners); *Rodriguez v. Rivera*, No. 12 CV 5823 (VB), 2013 WL 5544122, at *5 (S.D.N.Y. Sept. 16, 2013) ("Thus, it is the limitation the State imposes on the individual's freedom to act on his own behalf—through incarceration, institutionalization, or *other similar restraint of personal liberty*—that triggers the protections of the Due Process Clause." (emphasis in original; internal quotation omitted)).

The Supreme Court in *DeShaney* held that the special relationship theory did not apply to a case in which the individual was no longer in the custody of the state. *DeShaney*, 489 U.S. at 201. In determining whether a special relationship exists, the Second Circuit has focused on whether the individual is in "involuntary custody." *Matican*, 524 F.3d at 156. Involuntary custody may exist when an individual's freedom is "somewhat curtailed," such as when the State has legal custody of the individual, even if it does not have physical custody. *Compare Jacobs v. Ramirez*, 400 F.3d 105 (2d Cir. 2005) (holding that State retained minimal duty to parolee after his release, to extent that it continued to impose limitations on parolee) *with McGhie v. Main*, 11-CV-3110, 2011 WL 4852268, at *5 (E.D.N.Y. Oct. 12, 2011) (dismissing claim that parole officer failed to provide plaintiff with mental health treatment because plaintiff not incarcerated or institutionalized and was free to find own treatment).

"[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). In order to prevail on a Fourteenth Amendment claim under the special relationship theory, a plaintiff "must show that the [defendant's] behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican*, 524 F.3d at 155 (quoting *Lewis*, 523 U.S. at 848 n.8).

### III. Analysis of Plaintiff's Claims

Plaintiff sets forth several bases for his claims, which roughly break down to three main sets of allegations or arguments as to how Defendant violated his constitutional rights—(1) P.O. Ryan's interference with his prescribed pain medication; (2) Defendant's restriction of Plaintiff's ability to seek employment; and (3) Defendant's failure to provide Plaintiff with clothing and toiletries, and/or to protect him from the cold weather by assisting him in seeking shelter or a place to congregate.

#### A. *Interference with Medication Claim*

Plaintiff, in his opposition to the instant motion, concedes and abandons his claim that Defendant violated his Eighth and Fourteenth Amendment rights by interfering with his ability to take his prescription medication. (Pl.'s Opp'n at 4, ¶ 8 ("Plaintiff has opted to concede error on [the interference with medication] claim, therefore abandoning the same.").) Therefore, the claim is dismissed.

#### B. *Other Claims*

Plaintiff avers that Defendant's instruction that he not seek employment kept him from being able to care for himself and from obtaining winter clothing to protect him from the cold weather during the days in which he was forced to leave Bridges during daytime hours, in violation of his Fourteenth Amendment rights. Plaintiff further contends that since Defendant would not allow him to seek employment, he was unable to protect himself from the cold weather and that P.O. Ryan violated his constitutional rights by not assisting him in obtaining clothing or helping him "in seeking refuge from the cold winter days that Plaintiff had to walk around in daily." (Pl.'s Opp'n ¶ 9.)

Under *Jacobs* and accepting Plaintiff's allegations as true, Ciccone and P.O. Ryan clearly had the kind of "special relationship" which could subject P.O Ryan to liability notwithstanding

9

the general rule of *DeShaney*. To the extent that Plaintiff was subject to limitations on his freedom while on parole, he was also owed some duty by the government. "[A] parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed." *Jacobs,* 400 F.3d at 106. Nevertheless, "because the limitations imposed by the state are minimal, so too are the duties it assumes." *Id.*; *see also Rodriguez v. Rivera*, No. 12 CV 5823 (VB), 2013 WL 5544122, at *7 (S.D.N.Y. Sept. 16, 2013) ("Because the limitations imposed by the State on parolees are minimal, the duties assumed by the State are also minimal."); *Gibson v. Wood*, 563 F. Supp. 2d 341, 347 (D. Conn. 2008).

Even if P.O. Ryan's behavior falls into the "special relationship" exception to the *DeShaney* rule and perhaps violated a duty owed to Plaintiff, she can only be held liable if her actions "shock the conscience." *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). "This requirement screens out all but the most significant constitutional violations, 'lest the Constitution be demoted to . . . a font of tort law.'" *Id*. (quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 848 n.8 (1998)).

"In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity.'" *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quoting *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.,* 298 F.3d 168, 173 (2d Cir. 2002)); *see also id*. *at* 79 ("Government action resulting in bodily harm is not a substantive due process violation unless the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (internal quotation omitted)); *Pena v. DePrisco,* 432 F.3d 98, 112 (2d Cir. 2005); *Cooper v. City of Hartford*, No. CIV A 3:07-CV-

823JCH, 2009 WL 2163127, at *14-15 (D. Conn. July 21, 2009). Harm that is negligently inflicted falls beneath the threshold, while "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis,* 523 U.S. at 849. Falling somewhere in between these two extremes is "deliberate indifference." The Supreme Court has recognized that conduct exhibiting "deliberate indifference" to harm can support a substantive due process claim, with an important qualification:

> Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking.

*Lombardi*, 485 F.3d at 82.

In support of his claim, Ciccone alleges that his constitutional rights were violated because P.O. Ryan "ordered the Plaintiff not to seek or obtain employment, and thereafter, she wouldn't assist Plaintiff in obtaining clothing, nor would she help in seeking refuge from the cold winter days that Plaintiff had to walk around in daily." (Pl.'s Opp'n ¶ 9.) Citing to *Jacobs* and *DeShaney*, Plaintiff avers that his "claim is the prototypical example of an individuals [*sic*] libert[y] being restricted to the extent that it [*sic*] most certainly harmful within the meaning of the estelle-youngberg [*sic*] analysis."[3] (*Id.* ¶ 11.) It is clear from the Complaint that Plaintiff was subject to limitations on his freedom of movement, due to the conditions of his parole and the instructions of his parole officer. Mr. Ciccone's situation is also one with which it is easy to sympathize.

---

[3] Plaintiff also argues that it is ironic that the defendant does not contest and/or disagree with the allegations, but rather argues that her actions were reasonable and that Plaintiff had no clearly-established right to clothing, toiletries, employment and/or a place to congregate during the day. (Pl.'s Opp'n ¶¶ 6, 17.) Plaintiff appears to misunderstand the purpose of a motion to dismiss. Because the court must, on a motion to dismiss, "take all well-plead factual allegations as true" and draw "all reasonable inferences . . . in a light most favorable to the plaintiff[ ]," *Leeds*, 85 F.3d at 53, Defendant does not need to contest the allegations in order to prevail. This is not a motion for summary judgment, but rather a motion that contests the sufficiency of the pleadings.

Other relevant details, however, militate against a finding that P.O. Ryan's conduct shocks the conscience. Plaintiff's allegations, taken as true, show only that Defendant instructed him to seek clothing from other sources and that she believed Plaintiff's required programming would complicate his ability to maintain employment; they do not demonstrate that Defendant was deliberately indifferent to an excessive risk of harm to Ciccone's health or safety. It appears from the allegations in Plaintiff's own Complaint that Defendant gave Plaintiff alternative options for finding clothing, and that her decision to instruct him not to seek employment was not arbitrary, but rather was based on a belief that his doing so would interfere with his required programming. Further, Plaintiff was on parole and not incarcerated; "[b]ecause the limitations imposed by the State on parolees are minimal, the duties assumed by the State are also minimal." *Rodriguez*, 2013 WL 5544122, at *7.

## IV.   Qualified Immunity

Even if Defendant's behavior were found to "shock the conscience," however, she would still be entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity protects defendants not just from liability, but also from having to litigate at all. *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

"In resolving the question of qualified immunity, a court must decide whether the alleged conduct was a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 164 n.2 (2d Cir. 2013) (citing *Saucier,* 533 U.S. at 201); *see also Hope v. Pelzer,* 536

U.S. 730, 739 (2002) (contours of constitutional right violated must be sufficiently clear). To determine whether a right was clearly established, the Court looks to:

> (1) whether the right in question was defined with 'reasonable specificity a reasonable defendant official would have understood that his or her acts were unlawful'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Gonzalez*, 728 F.3d at 163-64 (2d Cir. 2013) (quoting *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)).

Plaintiff avers that Defendant is not entitled to qualified immunity and points to *Jacobs v. Ramirez*, in which the Second Circuit held that the State retained a minimal duty to a parolee after his release to the extent that it continued to impose limitations on him. *See Jacobs*, 400 F.3d at 106. Plaintiff is correct in his assertion that *Jacobs* established that some duty is owed to a parolee if limitations are imposed upon him but, as discussed in the previous section, it is unclear that Defendant's conduct violated a constitutional right. Any constitutional right that may have been violated in this case was not so "clearly established" that a reasonable official would understand that what he or she was doing violated that right. There is no clearly established constitutional right of a parolee to have clothing provided by the government, or assistance in finding a warm place to congregate during the winter when the parolee's freedom of movement is not otherwise restricted. Even if Defendant's behavior were found to "shock the conscience," she would still be entitled to qualified immunity and thus Plaintiff's claims must still be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motions at Docket Nos. 24 and 30, and to terminate this case in accordance with this opinion.

Dated:   August 7, 2015
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge